UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Brandon W. Chartier

     v.                             Civil No. 16-cv-127-PB

New Hampshire Department of
Corrections and Michael Zenk,
New Hampshire State Prison Warden

REPORT AND RECOMMENDATION

New Hampshire State Prison ("NHSP") inmate Brandon W.
Chartier has filed a document, docketed as the complaint (doc.
no. 1) in this action, entitled "Motion for Preliminary
Injunctive Relief and/or Protective Order; Motion for Counsel."
The complaint (doc. no. 1) is before the court for preliminary
review under 28 U.S.C. § 1915A and LR 4.3(d)(1). The request
for a preliminary injunction has been referred to the magistrate
judge for a Report and Recommendation. See April 8, 2016,
Order.

I. **Preliminary Review Standard**

For the purposes of this court's preliminary review of pro
se pleadings under 28 U.S.C. § 1915A and LR 4.3(d)(1), the court
construes the pleading liberally in determining whether the
inmate has stated a claim. See Erickson v. Pardus, 551 U.S. 89,
94 (2007). Disregarding legal conclusions, the court considers

whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## II.  Due Process Claim

### A.  Background

Chartier is an NHSP inmate who is beyond his minimum parole eligibility date.  Chartier alleges that he expected to be released to the community on parole on April 25, 2016.  In the complaint (doc. no. 1), Chartier never clearly states that he was actually granted parole.  For purposes of conducting this preliminary review, the court assumes, without deciding, that Chartier expected to be released from prison on April 25, 2016, pursuant to a grant of parole.  Chartier has a housing plan that was approved on December 31, 2015, including a bed in a substance abuse rehabilitation facility beginning in June 2016.

Chartier's claims in this action arise out of an incident in March 2016, in which an NHSP corrections officer, Lt. Linette, discovered a metal rod in a cell Chartier shared with an inmate named Blackenship.  Both Chartier and Blackenship were charged with possessing, manufacturing, or introducing a weapon or instrument that could be used as a weapon into the prison, a

major disciplinary offense.  Chartier's cellmate pleaded guilty.
Another inmate, Nicholas Rae, who Chartier asserts had access to
Chartier's cell, signed a confession stating that Rae was
responsible for putting the rod in Chartier's cell.

Chartier pleaded not guilty, and a disciplinary hearing was
held on March 27, 2016.  Chartier asserts that in connection
with the disciplinary proceedings prison officials denied him
the opportunity to have the rod tested for DNA or fingerprints;
that the hearing officer spoke with Lt. Linette in Chartier's
case outside Chartier's presence; that Lt. Linette, the
prosecuting officer, was biased; that bias against Chartier
infected the entire proceedings; and that the hearing officer
denied Chartier the opportunity to cross-examine witnesses, to
otherwise challenge the evidence against him, and to present
evidence, including Rae and other witnesses whose testimony
would have exonerated Chartier.

The hearing officer found Chartier guilty and imposed as
sanctions: 65 days loss of canteen, recreation, and electronics;
and 15 days punitive segregation, suspended for 180 days.
Chartier asserts that the guilty finding carries a minimum 90-
day "setback" period in which he will not be released on parole.
Chartier asserts that as a result, he will remain in prison past

his expected release date of April 25, 2016, and he will lose access to the rehabilitation facility bed in June 2016.

Chartier's complaint includes as an exhibit a copy of his March 31, 2016, appeal of the hearing officer's decision, in which Chartier argued that the disciplinary proceedings violated his rights under the Sixth and Fourteenth Amendments. Chartier asserts here that Lt. Linette falsely accused him of a disciplinary offense, that Chartier did not receive due process in the disciplinary proceedings, and that Lt. Linette created a "hostile environment" in the NHSP, causing Chartier to fear further retaliation from both prison officials and inmates, and causing emotional and psychological injuries to Chartier.

**B.   Analysis**

**1.   Due Process**

Due process requirements apply only to the deprivation of protected interests in life, liberty, or property. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); González-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010). Protected liberty interests, for a prisoner challenging the imposition of sanctions through disciplinary proceedings, "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted).

Chartier's allegations regarding the sanctions imposed by the hearing officer, that is, a temporary loss of canteen, electronics, and recreation, and 25 days of punitive segregation, suspended for 180 days, are not atypical or significant, and thus do not give rise to a viable due process claim. See, e.g., Sandin, 515 U.S. at 484 (30 days in punitive segregation did not implicate liberty interest); Umondak v. Ginsel, 426 F. App'x 267, 268-69 (5th Cir. 2011) (loss of recreation for 25 days did not establish due process violation); Towle v. Eldridge, No. 11-cv-293-SM, 2011 U.S. Dist. LEXIS 150862 at *6, *9-*10 (D.N.H. Dec. 20, 2011) (49 days in pending administrative review status in segregation; 75 days loss of phone and canteen; 75 hours of extra duty; 20 days in punitive segregation (10 days imposed and 10 days suspended), were not atypical and significant hardships), R&R approved by No. 11-cv-293-SM, 2012 U.S. Dist. LEXIS 2611 (D.N.H. Jan. 6, 2012).

The rules of the New Hampshire Adult Parole Board ("APB") indicate that, as a standard practice, the board alters the

release date for inmates who have previously been approved for
parole, if they are found guilty of disciplinary offenses while
awaiting parole.  See N.H. Code Admin. R. Par 203.09 ("The board
shall hold a reconsideration hearing for any inmate previously
approved for parole who receives a disciplinary write-up prior
to release.  At the reconsideration hearing the board shall
determine the effect of the disciplinary upon the inmate's
release date.  The standard setback shall be 60 days for a minor
disciplinary and 90 days for a major disciplinary.").  Chartier
argues that he had a liberty interest in being released on
parole on April 25, 2016, because he had already been approved
for release on that date, and that that liberty interest was
implicated in his March 2016 disciplinary proceedings.  By
operation of the board's rules, however, the decision to grant
Chartier parole was conditioned on factors including his ability
to remain disciplinary free while awaiting release.  See id.

    A convicted person has no constitutional right to or
liberty interest in conditional release from incarceration, on
parole or otherwise, "'before the expiration of [his] valid
sentence.'"  González-Fuentes, 607 F.3d at 886 (quoting
Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1,
7 (1979)).  A right to parole under the Fourteenth Amendment's

Due Process Clause exists only if state law creates that right.
See Sandin, 515 U.S. at 483-84; Hamm v. Latessa, 72 F.3d 947,
954-55 (1st Cir. 1995).  New Hampshire has not created a liberty
interest in the opportunity for parole.  See Dupont v. N.H.
Adult Parole Bd., No. 11-cv-156-SM, 2011 U.S. Dist. LEXIS 150902
at *10, 2011 WL 6934778 at *4 (D.N.H. Dec. 19, 2011), R&R
approved by No. 11-cv-156-SM, 2012 U.S. Dist. LEXIS 15085, 2012
WL 405505 (D.N.H. Feb. 8, 2012).

Neither the approval of Chartier's parole plan nor
Chartier's expectation that he would be released in April 2016,
gave Chartier the same liberty interest in release as a parolee
who has already been released to the community.  Beatty v.
Gerry, No. 07-cv-395-JM, 2008 WL 2065931 at *3, 2008 U.S. Dist.
LEXIS 41360 at *7-*8 (D.N.H. May 13, 2008) ("The petitioner
acquires no liberty interest in parole status until his parole
plan is approved, and he is actually released from
incarceration." (emphasis added)).  Chartier's loss of an
opportunity for conditional release in April 2016, before his
sentence maximum date, did not implicate the Due Process Clause,
as his approval for parole was not unconditional and he had not
yet been released.  Accordingly, the district judge should

7

dismiss Chartier's due process claims challenging the March 2016 disciplinary proceedings.

### 2. <u>Sixth Amendment</u>

Chartier alleged in his administrative appeal of the March 2016 disciplinary finding to the NHSP warden, that the hearing officer's failure to allow him to call witnesses, to present evidence, and to cross examine witnesses violated Chartier's Sixth Amendment rights.  To the extent Chartier intends to assert similar Sixth Amendment claims here, such claims should be dismissed; to the extent Chartier had any right to procedural protections in the disciplinary proceeding, that right would have arisen under the Fourteenth Amendment Due Process Clause, and not the Sixth Amendment.  <u>Cf.</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 568 (1974) (Sixth Amendment right to confront and cross-examine witnesses does not apply to prison disciplinary proceedings).  As discussed stated above, Chartier has not stated a due process claim upon which relief might be granted.

### 3. <u>Hostile Environment, Harm, and Retaliation</u>

With respect to Chartier's assertions regarding his emotional and mental state, the "hostile environment," and Chartier's fears regarding retaliation, Chartier has not alleged sufficient facts to show that any prison official has been

"'deliberate[ly] indifferen[t]'" to any substantial risk of serious harm to Chartier.  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted).  Chartier has also failed to allege facts sufficient to state a claim that prison officials have retaliated against him for engaging in protected speech or conduct under the First Amendment.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011); Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009).  Accordingly, Chartier's claims regarding the hostile environment, his mental and emotional state, and fear of retaliation, should all be dismissed for failure to state any federal claim upon which relief can be granted.

## III. **Preliminary Injunction**

A plaintiff seeking preliminary injunctive relief must demonstrate that "'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted).  The likelihood of success on the merits weighs heavily in the analysis.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) ("if the moving party cannot demonstrate that he is likely to succeed in his quest,"

preliminary injunctive relief is properly denied without further analysis).  Because Chartier has failed to plead any actionable federal claims, he cannot show a likelihood of success on the merits.  Accordingly, the district judge should deny the request for a preliminary injunction (doc. no. 1).

## IV.  Motion to Appoint Counsel

A litigant in a civil case does not have a right to counsel.  The court has discretion to deny a motion for counsel filed by an in forma pauperis civil litigant, unless the litigant shows that "exceptional circumstances [are] present such that a denial of counsel [would be] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).

The record here does not suggest that this case presents any exceptional circumstances warranting an order appointing counsel for Chartier.  Chartier's motion for appointment of counsel should therefore be denied, without prejudice to refiling, if the district judge does not dismiss this action.

## Conclusion

For the foregoing reasons, the district judge should dismiss this case and deny Chartier's requests for a preliminary

injunction and for an appointment of counsel.  Any objections to
this Report and Recommendation must be filed within fourteen
days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).
Failure to file objections within the specified time waives the
right to appeal the district court's order.  See Garayalde-Rijos
v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).


Andrea K. Johnstone
United States Magistrate Judge


April 14, 2016

cc:  Brandon W. Chartier, pro se